UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| THE CITY OF HIALEAH EMPLOYEE'S RETIREMENT SYSTEM and LABORERS PENSION TRUST FUNDS FOR NORTHERN CALIFORNIA, On Behalf of Themselves and All Others Similarly Situated,<br><br>       Plaintiffs,<br><br> vs.<br><br>TOLL BROTHERS, INC., et al.,<br><br>       Defendants. | Civ. Action No. 07-1513<br><br>The Honorable C. Darnell Jones II<br><br>REPORT OF RULE 26(f) MEETING |

Pursuant to Fed. R. Civ. P. 26(f), a meeting was held on November 18, 2008, and was attended by:

> Spencer A. Burkholz and Ray A. Mandlekar of Coughlin Stoia Geller Rudman & Robbins LLP, and Russell D. Paul of Berger & Montague, P.C., co-lead counsel for Lead Plaintiffs The City of Hialeah Employees' Retirement System and Laborers Pension Trust Fund for Northern California.
>
> Edmund Polubinski III, Jonathan D. Martin and Edward Sherwin of Davis Polk & Wardwell LLP, and Michael Newman of Dechert LLP, counsel for defendants Toll Brothers, Inc. ("Toll" or the "Company"), Robert I. Toll, Bruce E. Toll, Zvi Barzilay, Joel H. Rassman and Joseph Sicree.
>
> Robert E. Zimet and Christopher P. Malloy of Skadden, Arps, Slate, Meagher & Flom LLP, counsel for defendants Robert S. Blank, Paul Shapiro, Richard Braemer and Carl Marbach.

The parties have also had discussions subsequent to November 18, 2008, concerning the discovery of Electronically Stored Information ("ESI") and completion of this report.

**1.      Discussion of Claims, Defenses and Relevant Issues**

(a)      Plaintiffs' position

Full discovery should begin immediately. This Court, in certifying the memorandum and order denying defendants' Motion to Dismiss to the United States Court of Appeals for the Third Circuit, stated in its September 21, 2009 Order: "Discovery remains STAYED pending the outcome of the interlocutory appeal before the U.S. Court of Appeals for the Third Circuit." Since the Third Circuit declined to accept the 28 U.S.C. §1292(b) Petition of defendants in its Order of November 3, 2009, discovery should proceed apace.

Over two years ago, on August 13, 2007, plaintiffs filed their Amended Complaint for Violation of the Securities Exchange Act of 1934 (the "Complaint"). Since that time, this Court (both Judges Giles and Jones) and the Third Circuit have denied defendants' challenges to the sufficiency of the Complaint under the securities laws – denying defendants' Motion to Dismiss, Motion for Judgment on the Pleadings and Reconsideration and Petition under 28 U.S.C. §1292(b).

- 1 -

Plaintiffs bring claims against all defendants under §10(b) of the Securities Exchange Act of 1934 ("1934 Act") and Rule 10b-5 promulgated thereunder, as well as under §20(a) of the 1934 Act. Plaintiffs also bring claims against defendants Robert Toll, Bruce Toll and Joseph Sicree under §20A of the 1934 Act. Plaintiffs believe that defendants will produce millions of pages of documents in response to plaintiffs' discovery requests, which is a typical volume for a complex securities fraud case. Thus, plaintiffs' position throughout this report is mindful of this undertaking by the parties. In fact, setting of a realistic expert schedule, discovery cut-off date and trial date should be triggered off the date that defendants complete document production.

Many of the facts supporting plaintiffs' claims are described in detail in the Complaint. In summary, these facts are that defendant Toll is a publicly-owned homebuilder specializing in large, luxury homes sold primarily to middle-income and upper-income buyers. Its stock trades on the New York Stock Exchange ("NYSE"). Between 12/9/04 and 11/8/05 (the "Class Period") Toll and the other defendants engaged in a scheme to artificially inflate the price of the Company's stock by knowingly causing to be issued certain false and misleading statements about Toll's current and projected operational and financial performance. In short, defendants misrepresented Toll's ability to open new active selling communities at the rate necessary to support its financial projections, "traffic" in its existing selling communities, demand for Toll's homes and Toll's ability to continue its historically strong earnings growth beyond its 2005 fiscal year. Many of these false and misleading statements are quoted in detail in the Complaint at ¶¶43-129. At all times, defendants knew their optimistic statements about traffic, demand, opening new selling communities, immunity from rising interest rates, as well as their projections lacked a reasonable basis and that they were, at a minimum, reckless. These statements were material to investors, and caused artificial inflation of the price of Toll securities. Taking advantage of this inflation, the individual defendants sold Toll stock during the Class Period for substantial profit, as alleged in the Complaint at ¶¶145-152.

Ultimately, the true state of affairs at Toll was revealed to the market through a series of disclosures described in the Complaint at ¶¶130-134, resulting in a dramatic decline of the price of Toll shares and resulting injury to plaintiffs.

Plaintiffs identify the following as the primary issues in the case: Whether the statements alleged in the Complaint at ¶¶43-129 were materially false or misleading, and whether defendants knew of, or recklessly disregarded, the false or misleading nature of those statements, loss causation and economic loss.

Plaintiffs identify the following subjects on which discovery is to be sought: The Company's actual and projected financial performance, including, but not limited to, earnings; its ability to open new active selling communities; "traffic" in the Company's existing selling communities; demand for the Company's homes; sales of the Company's homes; its business model; the impact of rising interest rates and other negative macroeconomic factors on the Company's actual and projected financial performance; the Company's reports, reporting processes, budgets and budgeting processes; defendants' insider trading; analysts' research, reports and communications regarding Toll; defendants' statements to the public relating to these matters; generally any matters alleged in the Complaint; and each defendant's knowledge of these matters.

Plaintiffs will require the aforementioned discovery before deposing defendants and their representatives (with the exception of depositions pursuant to Rule 30(b)(6) and depositions regarding ESI and document production matters), opposing any motion for summary judgment, engaging expert witnesses and trial. As set forth below, plaintiffs will likely file a motion for class certification on or around February 19, 2010.

(b)     Defendants' position

Although plaintiffs' claims have survived motions to dismiss on the pleadings, their claims are meritless and – more immediately – not properly resolved on a classwide basis. For that reason

and as explained further below, the Court should follow other courts in similar cases and order that discovery and a decision on class certification precede the expensive and burdensome process of merits discovery.

The threshold issue in this putative class action is now whether plaintiffs can establish, by a preponderance of the evidence, each of the requirements for class certification under Fed. R. Civ. P. 23. Defendants' position is that class certification is not appropriate in this case because, among other reasons, plaintiffs cannot show that questions of law or fact common to the putative class members predominate over any questions affecting only individual members. In particular, plaintiffs will be unable to show by a preponderance of the evidence, as is their burden on class certification, that the fraud-on-the-market presumption applies, because they cannot establish that the alleged misstatements moved Toll's stock price or that the stock price declined as a result of the alleged corrective disclosures. Because a decision on plaintiffs' motion for class certification, which would be made early in the litigation, could lead to an early resolution of the case, defendants' position is that any discovery should be bifurcated so that class certification discovery, and any decision on plaintiffs' motion for class certification, precedes merits discovery.[1]

Addressing class certification before embarking on expensive and burdensome merits discovery would serve the same "legal and practical interests" that motivated this Court's September 21, 2009 order because it would "best advance the termination or continuation of this very protracted and likely quite expensive litigation." (Order dated Sept. 21, 2009, at 4.)

---

[1] See Manual for Complex Litigation, Fourth § 21.14, at 256 (2004) (stating that "[c]ourts often bifurcate discovery between certification issues and those related to the merits of the allegations," because "in cases that are unlikely to continue if not certified, discovery into aspects of the merits unrelated to certification delays the certification decision and can create extraordinary and unnecessary expense and burden").

Defendants' position is that merits discovery, in the event that it proceeds, will demonstrate that plaintiffs cannot meet their burden of proving (i) that defendants made any actionable misstatements, (ii) that defendants acted with the required scienter, (iii) that plaintiffs and other class members reasonably relied on any purported misstatements and (iv) that the alleged misstatements actually caused any losses to plaintiffs or the putative class members.  Among other things, defendants expect that merits discovery would show that the future financial forecasts at issue had a reasonable basis when made and were based upon the information available to defendants at the time; that any disclosures relevant to these forecasts made later in the Class Period were timely and based on then-current information; that defendants made no actionable misstatements of then-present fact; that the declines in stock price for which plaintiffs now seek to recover were not attributable to any alleged misstatements or omissions; and that, when properly viewed in context, defendants' stock sales during the relevant time frame were appropriate and not indicative of scienter.

Defendants identify the following subjects on which discovery is to be sought:  Matters relating to the allegations in the Complaint and matters concerning the appropriateness of certifying this case as a class action, including, but not limited to, plaintiffs' purchases and sales of shares of the Company's stock, plaintiffs' investment strategy and investment decision-making process, sources of information consulted by or relied upon by plaintiffs or their advisors in connection with their decisions to buy or sell shares of the Company's stock, plaintiffs' relationship with plaintiffs' counsel and plaintiffs' knowledge of and willingness to oversee this litigation.

    (c)      Likely Motions and Their Timing

        (i)      Recommended dates for class certification briefing:

Recommended date for filing a motion for class certification: **February 19, 2010**.

Recommended date for filing opposition to the motion for class certification: **April 19, 2010**.

Recommended date for filing the reply to opposition to motion for class certification: **May 27, 2010**.

        (ii)    Recommended dates for dispositive motions:

The parties will recommend a schedule for dispositive motions at a later date.

**2.   Informal Disclosures**

The parties exchanged the initial disclosures required by Rule 26(a)(1) on **December 10, 2008**.

**3.   Formal Discovery**

    (a)    Scope and Timing of Discovery

The parties recommend that discovery should proceed in phases, as follows:

        (i)    Class certification discovery and merits discovery:

**Plaintiffs'** position is that full discovery, including merits discovery, should begin immediately, and not be subject to the delay proposed by defendants.

To avoid unnecessary burden and expense, **Defendants'** position is that discovery should be bifurcated so that class certification discovery, and any decision on plaintiffs' motion for class certification, precedes merits discovery.

        (ii)    Expert discovery:

The parties agree that expert discovery should follow fact discovery.

        (iii)    Recommended discovery completion date:

**Plaintiffs'** recommended date for the close of the discovery period:  At this time, plaintiffs cannot determine a reasonable time by which plaintiffs will be able to review and complete fact discovery as it is affected by the date by which defendants will be able to complete their massive document production.  Once plaintiffs serve their first set of discovery requests on defendants, the volume of discovery to be produced may be better assessed.  Thus, plaintiffs propose that the Court

schedule a status conference three months from the date of the Rule 16 scheduling conference, during which the parties will update the Court on the status of document production and propose a date certain (if not completed by that time) for the completion of defendants' paper and ESI discovery production and the close of the discovery period.

**Defendants** recommend that fact discovery be complete nine months from the Court's decision on plaintiffs' motion for class certification.

Both plaintiffs and defendants agree that the discovery deadline should occur more than 120 days from the date of the Rule 16 pretrial conference in light of the issues presented by the case.

      (b)    Depositions

           (i)    Depositions of defendants and their representatives:

**Plaintiffs** submit that depositions of defendants and their representatives, with the exception of depositions pursuant to Fed. R. Civ. P. 30(b)(6) and depositions regarding ESI and document production matters, should not commence until defendants complete their production of paper documents and ESI. A scheduling conference immediately following that date would be appropriate as the parties will be better prepared at that time to discuss the number of depositions necessary and the time that will be required to complete them. Plaintiffs propose that a date certain for completion of defendants' paper and ESI discovery production should be designated based on further input from defendants regarding the volume of such discovery.

**Defendants** submit that, unless the parties agree otherwise, no depositions should commence until the parties complete their productions of paper documents and ESI, to insure that depositions take place on a complete documentary record and thereby reduce the risk that deponents will be subject to more than one deposition.

           (ii)    Third-party depositions:

**Plaintiffs** submit that third-party depositions should be permitted to proceed without any deferral and without regard to completion of defendants' production.

**Defendants'** position is that third-party depositions should not proceed until after the production of paper documents and ESI is complete, to insure that depositions take place on a complete documentary record and thereby reduce the risk that third-party deponents will be subject to more than one deposition.

  (c)  Limitations on discovery imposed by the Federal Rules of Civil Procedure

    (i)  Number of Depositions:

**Plaintiffs** submit that given the nature of this case and expected volume of documents produced by defendants, more than ten fact witness depositions will be reasonably necessary. At this point in time, however, it is difficult to estimate a more precise number of depositions required without the benefit of discovery. Plaintiffs therefore propose that the parties discuss a deposition limit to be submitted to the Court after defendants complete their document production.

**Defendants'** position is that the parties should adhere to the limits on depositions provided by the Federal Rules of Civil Procedure. If additional depositions become reasonably necessary, they can be granted by further order of this Court or agreed to by stipulation.

    (ii)  Number of Interrogatories/Requests for Admissions:

The parties agree to adhere to the 25-interrogatory limit provided by Fed. R. Civ. P. 33, with reservation of right to seek additional interrogatories under exigent circumstances.

  (d)  ESI

This case presents issues relating to disclosure or discovery of ESI, including the form or forms in which it should be produced. ESI confidentiality and privilege issues will be addressed more completely in connection with the parties' first requests for production of documents. With regard to ESI:

**Plaintiffs and defendants** agree that the scope and method of ESI production be conducted as follows: For scanned, non-ESI documents, the parties will produce single-page TIFF images with Concordance and Opticon load files. The file should be logically unitized (*i.e.*, contain correct document breaks, *e.g.*, a 5-page fax should be one document, containing 5 pages). The parties will produce the load files in the Concordance and Opticon format. For ESI, the parties agree to produce the metadata fields in Table 1 (attached hereto as Exhibit A), to the extent such metadata fields are available. Single-page TIFF images should be linked to the native document using a "Native Path" field; however, the parties agree that if ESI is redacted it will be provided in TIFF format only, without a link to the native document.

        (e)        Claims of privilege or protection

With regard to claims of privilege or of protection as to trial preparation materials, the parties propose the following:

        (i)        Protective Order:

The parties intend to negotiate a proposed stipulated protective order governing the protection of confidential and/or privileged materials, including procedures governing any unintentional production of confidential and/or privileged materials.

**Plaintiffs** propose that all paper and ESI discovery produced before the entry of a protective order be treated as "Attorneys' Eyes Only" until the parties are able to negotiate a proposed stipulated protective order. Plaintiffs believe this will avoid potential delays in the parties' discovery productions caused by protective order negotiations.

**Defendants** believe the parties can promptly agree to an appropriate protective order and that entry of such an order should precede the parties' production of documents. Plaintiffs' proposal to produce documents with a tentative "Attorneys' Eyes Only" designation will add to the expense and

burden of document production, because documents would then have to be re-reviewed and re-designated following the entry of the protective order.

(ii)     Privilege Logs:

Each party agrees to provide a privilege log at a time to be mutually agreed describing materials withheld or redacted on the basis of attorney-client privilege, work product doctrine and/or any other privilege.

**4.     Expert Witness Disclosures**

The parties will recommend a schedule for expert discovery at a later date.

(a)     Plaintiffs' position

**Plaintiffs** propose that dates for making expert designations and serving expert reports be set following the determination of the date on which defendants will complete their paper and ESI discovery production.

**Expert Reports**: Plaintiffs understand that this Court typically requires parties to simultaneously exchange expert reports and are prepared to do so.  However, plaintiffs do not object to defendants' request below to stagger the parties' exchange of reports.  Plaintiffs request a rebuttal expert report if the parties stagger their exchange of reports.

(b)     Defendants' position

**Defendants'** position is that, in a case of this nature, the parties should follow the Federal Rules Advisory Committee's recommendation that "in most cases the party with the burden of proof on an issue should disclose its expert testimony on that issue before other parties are required to make their disclosures with respect to that issue." Fed. R. Civ. P. 26 advisory committee's note to 1993 amends.  The approach recommended by the Advisory Committee is especially appropriate in a putative securities class action like this one for a number of reasons.  For example, because plaintiffs cannot prove causation and reliance on a classwide basis in the absence of expert testimony, they can

be expected to resort to complex financial modeling and other theories in an attempt to meet their burden. Because a key component of the defense on causation will almost surely involve a challenge to the assumptions underlying any such economic model as well as a challenge to the overall reliability of any such economic model, plaintiffs' experts should be required to identify their model or models and the accompanying theories upon which they plan to rely first, to provide defendants' experts with a meaningful opportunity to address those models and theories. Requiring defendants to anticipate the way in which plaintiffs intend to try to prove their case would result in undue prejudice to defendants and a needless waste of resources. Accordingly, defendants propose the following intervals for making expert disclosures and serving expert reports:

**Plaintiffs' Expert Designations**: 35 days after completion of fact discovery.

**Plaintiffs' Expert Reports**: 21 days after plaintiffs' expert designations.

**Defendants' Expert Designations**: 35 days after service of plaintiffs' expert reports.

**Defendants' Expert Reports**: 21 days after defendants' expert designations.

Defendants believe that it is premature to decide at this time whether or not rebuttal reports will be necessary or appropriate. Should plaintiffs determine after seeing defendants' expert reports that they wish to file rebuttal reports, they may seek leave to do so at that time.

### 5. Early Settlement or Resolution

Counsel for both parties have familiarized themselves with Local Rule 53.3, and have each advised their respective clients about ADR options. The parties have discussed ADR options and disagree as to whether to seek early resolution. **Plaintiffs** believe that mediation would be appropriate at this time as the Complaint has survived several challenges to its sufficiency. Although defendants are willing to consider the possibility of mediation, defendants are concerned that mediation would not be productive at this preliminary stage of the proceedings.

### 6. Proposed Trial Date

The parties can be available at the Court's convenience to conduct a trial of this matter after the completion of fact and expert discovery.

**7.     Other Matters**

Recommended date for filing motion/stipulation to amend the pleadings or to add additional parties: 90 days before the fact discovery completion date.

DATED: December 10, 2009

COUGHLIN STOIA GELLER
  RUDMAN & ROBBINS LLP
PATRICK J. COUGHLIN
SPENCER A. BURKHOLZ
LAURA M. ANDRACCHIO
SHANNON M. MATERA
MATTHEW I. ALPERT

s/ SPENCER A. BURKHOLZ
SPENCER A. BURKHOLZ

655 West Broadway, Suite 1900
San Diego, CA 92101
Telephone: 619/231-1058
619/231-7423 (fax)

BERGER & MONTAGUE, P.C.
SHERRIE R. SAVETT
BARBARA PODELL
RUSSELL D. PAUL

s/ SHERRIE R. SAVETT
SHERRIE R. SAVETT

1622 Locust Street
Philadelphia, PA 19103
Telephone: 215/875-3000
215/875-4604 (fax)

Co-Lead Counsel for Plaintiffs

CYPEN & CYPEN
STEPHEN H. CYPEN
777 Arthur Godfrey Road, Suite 320
Miami Beach, FL  33140
Telephone:  305/532-3200
305/535-0050 (fax)

Additional Counsel for Plaintiffs


By:  __s/ EDMUND POLUBINSKI III__
      EDMUND POLUBINSKI III

Michael P. Carroll (*admitted pro hac vice*)
Edmund Polubinski III (*admitted pro hac vice*)
Jonathan D. Martin (*admitted pro hac vice*)
DAVIS POLK & WARDWELL LLP
450 Lexington Avenue
New York, New York  10017
(212) 450-4000

Robert C. Heim
DECHERT LLP
Cira Centre
2929 Arch Street
Philadelphia, Pennsylvania  19104
(215) 994-4000

*Attorneys for Defendants Toll Brothers, Inc.,
   Bruce E. Toll, Robert I. Toll, Zvi Barzilay,
   Joel H. Rassman, and Joseph R. Sicree*


By:  _____s/ ANTHONY W. CLARK_____
      ANTHONY W. CLARK

SKADDEN, ARPS, SLATE, MEAGHER &
   FLOM LLP
One Rodney Square
P.O. Box 636
Wilmington, Delaware  19899-0636
(302) 651-3000


Robert E. Zimet (*admitted pro hac vice*)
Christopher P. Malloy (*admitted pro hac vice*)

- 13 -

>William F. Clarke, Jr. (*admitted pro hac vice*)
>Daniel M. Gonen (*admitted pro hac vice*)
>SKADDEN, ARPS, SLATE, MEAGHER &
>   FLOM LLP
>Four Times Square
>New York, New York  10036
>(212) 735-3000
>
>*Attorneys for Defendants Robert S. Blank,
>   Richard Braemer, Carl B. Marbach, and
>   Paul E. Shapiro*

S:\CasesSD\Toll Bros\mis00062997  26(f) 1.doc

- 14 -

CERTIFICATE OF SERVICE

I hereby certify that on December 10, 2009, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the e-mail addresses denoted on the attached Electronic Mail Notice List, and I hereby certify that I have mailed the foregoing document or paper via the United States Postal Service to the non-CM/ECF participants indicated on the attached Manual Notice List.

I certify under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed on December 10, 2009.

s/ SPENCER A. BURKHOLZ
SPENCER A. BURKHOLZ

COUGHLIN STOIA GELLER
 RUDMAN & ROBBINS LLP
655 West Broadway, Suite 1900
San Diego, CA 92101-3301
Telephone: 619/231-1058
619/231-7423 (fax)

E-mail: SpenceB@csgrr.com

# Mailing Information for a Case 2:07-cv-01513-CDJ

## Electronic Mail Notice List

The following are those who are currently on the list to receive e-mail notices for this case.

- **MATTHEW ALPERT**
  malpert@csgrr.com,e_file_sd@csgrr.com

- **LAURA ANDRACCHIO**
  lauraa@csgrr.com,e_file_sd@csgrr.com

- **SPENCER A. BURKHOLZ**
  spenceb@lerachlaw.com,e_file_sd@lerachlaw.com

- **ANTHONY WARNER CLARK**
  anthony.clark@skadden.com

- **WILLIAM F. CLARKE , JR**
  william.clarke@skadden.com

- **DANIEL M. GONEN**
  daniel.gonen@skadden.com

- **ROBERT C. HEIM**
  robert.heim@dechert.com,lisa.ricchezzs@dechert.com

- **MICHAEL L. KICHLINE**
  michael.kichline@dechert.com,lisa.ricchezza@dechert.com

- **KIMBERLY A. LAMAINA**
  klamaina@skadden.com,dlmlcwas@skadden.com

- **CHRISTOPHER P. MALLOY**
  christopher.malloy@skadden.com,paris.abell@skadden.com,jason.skorupka@skadden.com

- **RAJESH RAY MANDLEKAR**
  raym@csgrr.com,e_file_sd@csgrr.com

- **JONATHAN D. MARTIN**
  jonathan.martin@dpw.com

- **SHANNON MCKENNA MATERA**
  SMatera@csgrr.com,e_file_sd@csgrr.com

- **MICHAEL J. NEWMAN**
  michael.newman@dechert.com,lisa.ricchezza@dechert.com

- **ALYSON M. OSWALD**
  alyson.oswald@dechert.com,lisa.ricchezza@dechert.com

- **RUSSELL D. PAUL**
  rpaul@bm.net,kwalker@bm.net,lbauer@bm.net

- **BARBARA A. PODELL**
  bpodell@bm.net

- **EDMUND POLUBINSKI , III**
  edmund.polubinski@dpw.com,edward.sherwin@dpw.com

- **SHERRIE R. SAVETT**
  ssavett@bm.net,sdavis@bm.net,mgatter@bm.net

- **ROBERT E. ZIMET**
  robert.zimet@skadden.com

## Manual Notice List

The following is the list of attorneys who are **not** on the list to receive e-mail notices for this case (who therefore require manual noticing). You may wish to use your mouse to select and copy this list into your word processing program in order to create notices or labels for these recipients.

```
MICHAEL P. CARROLL
DAVIS, POLK & WARDWELL
450 LEXINGTON AVE.
NEW YORK, NY 10017
```